IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERT L ROWLAND,

    Plaintiff,

v.                                                                  CASE NO. 4:10-cv-00064-RH-GRJ

DONNIE CONYERS, et al,

    Defendants.

_____/

## O R D E R

Pending before the Court is the Plaintiff's complaint, which the Court has reviewed pursuant to 28 U.S.C. §1915A and finds that it fails to state a claim for relief based on the present facts and claims asserted.

Pursuant to the Prison Litigation and Reform Act, the Court shall dismiss a case if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §1915A(b)(1). However, because the Court must read Plaintiff's *pro se* allegations in a liberal fashion, Plaintiff will be granted an opportunity to file an amended complaint to state better his claims for relief.

Plaintiff claims that in February 2005 he was sentenced to ten years in state prison in Leon County, Florida. Before being transferred into the custody of the Department of Corrections Plaintiff was taken to the Liberty County Jail for proceedings on other charges. (Doc. 1, at 5). According to Plaintiff, in July 2005, former Liberty County Sheriff Harrell W. Revell approached Plaintiff about doing some extensive

remodeling on a home owned by Revell's friend, Sandy Vanlandingham. Id. at 5. Plaintiff claims that Vanlandingham was an investigator for the state prosecutor's office who worked on Plaintiff's case. Consequently, Plaintiff claims that he "was under duress" to perform work on the home. Id. at 5-8. Plaintiff began work on Vanlandingham's home in July 2005 and during the time Plaintiff worked on the house the Plaintiff was unsupervised and unlicensed. Id. Plaintiff claims that Vanlandingham was well aware that Plaintiff was a convict and knew there was a "conflict" between Vanlandingham and Plaintiff while Plaintiff was working on Vanlandingham's house. Id.

Plaintiff claims that Revell referred Plaintiff to other jobs in August and September 2005, at the homes of Harrell Brown, Pastor Victor Walsh, and Clyde Cobb and Diana Villarreal. Id. at 6-8. Plaintiff returned to work on the home of Vanlandingham in January 2006. Id. at 8. By this time, he had been convicted on the Liberty County charges. Id.

Plaintiff claims that although the Florida Department of Corrections should have been responsible for Plaintiff's medical care during the period of time he was performing work on the private residences the Cobb's homeowner's insurance paid for Plaintiff's medical care when Plaintiff severed his right thumb while working at the Cobb's residence. Id. at 9. Plaintiff claims that Cobb and Villarreal promised to give Plaintiff a truck and some land if Plaintiff agreed not to sue them for Plaintiff's injuries. Plaintiff claims that his thumb is permanently disfigured after this accident. Id.

After Plaintiff finally was placed into DOC custody in March 2006, he complained to DOC officials that he had performed work on private residences at

Revell's request without compensation as promised.  Id.

An investigation was conducted by Defendant Jennifer Skipper from the Inspector General's Office and Agent Ed King from the Florida Department of Law Enforcement (FDLE).  Id. at 10-11.  Plaintiff alleges, however, that Skipper and King confiscated Plaintiff's evidence and threatened one of his witnesses.  Id.  Plaintiff also claims that Defendant McAlpin –  a colonel at Calhoun Correctional Institution – threatened Plaintiff for talking with Skipper and King.  Id. at 11.  According to Plaintiff, when he told Skipper about McAlpin's threat she had Plaintiff transferred to Jefferson CI.  Id.

For relief, Plaintiff seeks a declaratory judgment from the Court declaring that these acts violated Plaintiff's rights. Plaintiff also requests compensatory and punitive damages.

In his complaint, Plaintiff has failed to organize his claims in separate counts but rather has identified his claims only generally in various paragraphs many of which concern multiple defendants and fact patterns.[1]  Id. at 7-8. The Court will, therefore, address the sufficiency of Plaintiff's complaint by referring to each defendant.

---

[1] Plaintiff has identified his claims as: due process violations (5th and 14th amendments) referenced in ¶¶ 4-7; due process violations (5th and 14th amendments) referenced in ¶¶11-13; due process and cruel and unusual punishment (5th, 8th and 14th amendments) referenced in ¶¶ 14-18; deliberate indifference to his serious medical needs and mental and emotional injury (5th, 8th and 14th amendments) at ¶¶19-22; due process and cruel and unusual punishment (5th, 8th, and 14th amendments) for mental duress in ¶¶23 -25; failure to train, illegal search and seizure, reprisal, threats, freedom of speech, mental and emotional duress and distress (1st, 4th, 5th, 8th, and 14th amendments), as alleged in ¶¶26-32; and deprivation of liberty, emotional injury and distress (5th, 8th, and 14th amendments), as alleged in ¶34.

(a) <u>Defendants Conyers and FDOC Secretary</u>

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under the color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992). Under 42 U.S.C. §1983, Plaintiff must show an affirmative causal connection between the Defendants' conduct and the constitutional deprivation. <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

Plaintiff has failed to include any allegations in his Complaint against Donnie Conyers and the Secretary of the FDOC in their individual capacities. Therefore, as currently framed, Plaintiff has failed to allege a cognizable claim under § 1983 against there defendants.

To the extent Plaintiff has named Conyers because he replaced Revell as Sheriff of Liberty County, the claim must be brought against Conyers in his official capacity and not, as here, in his individual capacity.

In addition, the Secretary of the FDOC cannot be sued under § 1983 simply because he is a supervisor. Supervisory officials are not liable under 42 U.S.C. §1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir.2003); <u>McKinney v. DeKalb County</u>, 997 F.2d 1440, 1443 (11th Cir. 1993); <u>Greason v. Kemp</u>, 891 F.2d 829, 836 (11th Cir. 1990).

Consequently, in the absence of any allegations detailing the personal

participation of Donnie Conyers or the Secretary of the FDOC in the conduct which forms the factual basis for Plaintiff's claims, these defendants should not be included as defendants in any amended complaint, if Plaintiff chooses to amend.

(b) <u>Sheriff Revell</u>[2]

Plaintiff claims that after his conviction and while Plaintiff was waiting to go to trial on other charges, Sheriff Revell "assigned" Plaintiff remodel Vanlandingham's new home. Plaintiff alleges that he was "under duress" to do the work because Vanlandingham was an investigator with the state attorney's office charged with prosecuting Plaintiff. Without specifying what promises Revell made, Plaintiff claims that Revell made "false promises" to Plaintiff and that Plaintiff was never paid for the work. From these allegations, Plaintiff claims that Revell violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments.[3] (Doc. 1, at 13-14).

The Due Process Clause of the Fourteenth Amendment provides that no state "shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. The Complaint is devoid of any specificity of the rights Plaintiff

---

[2] Although Sheriff Revell is named as a defendant on the cover of the complaint form and frequently is referred to throughout the factual basis of Plaintiff's claim, Revell has been marked out as a defendant on the attachment to page 2 of the Complaint. Plaintiff should make it clear in his amended complaint whether he intends to name the sheriff as a defendant. Plaintiff also has failed to provide an address for Revell. If Plaintiff intends to serve the former sheriff with the complaint, Plaintiff is required to provide the Court with an address.

[3] Due process, as referenced in the Fifth Amendment, affords protection from federal infringement of rights, and the Fourteenth Amendment protects persons from state action. Because Plaintiff is not a federal prisoner, the Fourteenth Amendment is the applicable constitutional reference.

was allegedly deprived of by Revell.  Due process does not protect prisoners from every negative impact their confinement may have on them.  Meachum v. Fano, 427 U.S. 215, 222 (1976).  Although prisoners retain due process and a number of other constitutional rights, a prisoner's liberty and property interests are, of course, subject to certain restrictions by virtue of their imprisonment.  Id. at 225.  Thus, prisoners are not entitled to due process procedures (notice and hearing) whenever their liberty is affected, but only when this restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Notably, the failure to compensate a prisoner for his work is not considered an atypical or significant hardship, particularly for prisoners in Florida, who generally are  not paid for labor which benefits the prison. See Daniels v. Crosby, 444 F.Supp. 2d 1220, 1226 n.4 (N. D. Fla. 2006), *citing* Villarreal v. Woodham, 113 F.3d 202 (11th Cir. 1997).[4]

In this case, however, the labor Plaintiff performed was for private persons and not directly for the benefit of the jail. Nonetheless, Plaintiff's complaint is not clear as to whether the work Plaintiff performed benefitted Sheriff Revell, whether Plaintiff is claiming that he was deprived of his liberty interest or whether Plaintiff was denied his due process rights when Sheriff Revell forced Plaintiff to work for private persons.

Similar claims have been addressed by other courts under the Eighth or Thirteenth Amendments.

---

[4]  The similarity in names of the plaintiff in this case and Diana Villarreal mentioned in the present complaint appears to be merely coincidental.

For example, in <u>Villarreal</u>, 113 F.3d 202, the sheriff there ordered a pretrial detainee to perform services for other inmates, medical and court personnel and failed to compensate the detainee for the services as promised. Id. at 204. The Court held that the forced performance of services, which did not pose a risk to the detainee's health or safety, did not violate the Eighth Amendment's prohibition of cruel and unusual punishment.[5] Id. at 207.

In <u>Watson v. Graves</u>, 909 F.2d 1549 (5th Cir. 1990) a Louisiana sheriff arranged for prisoners to work at his family's construction company as part of a "work release program," and the prisoners were paid considerably less than minimum wage. Id. at 1554-55. The Fifth Circuit held that the sheriff was not liable under §1983 for violation of the Thirteenth Amendment because the prisoners had a choice whether to work. The construction company on the other hand was liable for violating federal law (the FLSA) for failing to compensate the prisoners adequately. Id. at 1552-53.

It is not a violation of the Thirteenth Amendment simply because the work the prisoner performed was on private property.[6] For example, in <u>Murray v. Mississippi Dep't of Corrections</u>, 911 F.2d 1167 (5th Cir.1990) – despite noting that Mississippi

---

[5] Also at issue in <u>Villarreal</u> was whether the inmates must be paid a minimum wage as required by federal law, and the court held that pretrial detainees are not employees covered by the Fair Labor Standards Act and therefore, are not entitled to minimum wage.

[6] The Thirteenth Amendment provides in pertinent part that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction."

law[7] likely prevented an inmate from working on private property – the Court concluded that working an inmate on private property was no more violative of constitutional or civil rights than working inmates on public property. Id. at 1167-68.

In sum, while Plaintiff may have a viable claim under state law, simply because he worked on private property and did not receive pay – without more – these allegations are insufficient to allege a constitutional claim. [8]

### (c) Vanlandingham

Plaintiff complains that he was under duress when he performed work for Vanlandingham because Vanlandingham investigated Plaintiff's state criminal case. Further, Plaintiff complains that Vanlandingham owed him money. However, to state a claim under § 1983 Plaintiff must allege that Vanlandingham was acting under color of state law and not as a private homeowner because "merely private conduct, no matter how discriminatory or wrongful" does not violate § 1983. Johnson v. Wilbur, 375 Fed. Appx. 960, 964 (11th Cir. 2010), quoting Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003). A person acts under color of state law usually by virtue of his employment with the state or because he is acting for some other public official. West v. Atkins, 487 U.S. 42, 48-50 (1988). While Plaintiff claims that Vanlandingham worked as an investigator for the state attorney's office, Plaintiff

---

[7] Florida law also provides that inmates may not be leased to work for any private interests. Fla. Stat. Ann. §951.10 (2010).

[8] Indeed, Plaintiff alleges that he already has filed suit in state court, which is still pending in the Circuit Court for the Second Judicial Circuit in and for Liberty County, Florida. (No. 09-38-CA). (Doc. 1, at 3).

does not allege that Vanlandingham used this position in a manner that was unconstitutional. The fact that Vanlandingham worked for the state is not enough, particularly if the acts Plaintiff claims violated his rights were unrelated to Vanlandingham's state employment. A defendant is liable for his acts under color of law when he abuses the position given to him by the State Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) and not simply because the defendant may have been employed by the state. "The dispositive issue is whether the official was acting pursuant to the power he/ she possessed by state authority or acting only as a private individual. Edwards v. Wallace Community College, 49 F.3d 1517, 1523 (11th Cir.1995).

Thus, in order to proceed with his claim against Vanlandingham Plaintiff must allege facts demonstrating how, if at all, Vanlandingham used his position as a state employee to obtain Plaintiff's services to remodel Vanlandingham's home without paying Plaintiff or anyone else for the work.

### (d) Colonel McAlpin

Plaintiff's only claim against Defendant McAlpin is that McAlpin threatened him. Verbal abuse and unfulfilled threats by corrections officers do not violate an inmate's constitutional rights under section 1983. Hernandez v. Florida DOC, 281 Fed. Appx. 862 (11th Cir. 2008); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) (threatening language and gestures by a corrections officer do not state an Eighth Amendment claim). Plaintiff alleges that he was transferred by Defendant Skipper immediately after he notified Skipper of McAlpin's threats. As such McAlpin did not

have any opportunity to act on the threats and, therefore, Plaintiff has failed to state a claim against McAlpin.

### (e) Skipper and King

Plaintiff characterizes his claims against Defendants Skipper and King as "illegal search and seizure, duress, fear of reprisal, threat from state employee acting under color of state law, violation of freedom of speech, mental emotional distress...." (Doc. 1, at 14). Construing these claims liberally, Plaintiff alleges that these persons used their positions as investigators for the DOC and the FDLE to obtain information from Plaintiff about illegal activities, then seized the evidence from him to keep the information from being used against the sheriff and "others" in court. Plaintiff also claims that Skipper and King threatened a witness to keep the witness from testifying on Plaintiff's behalf. Construing these facts as true – which the Court is required to do so at this stage – Plaintiff has stated a plausible claim for violation of his First Amendment right to access the courts so that he could exercise his "freedom of speech."

However, these facts are insufficient to allege a claim for "illegal search and seizure" under the Fourth Amendment. Prisoners do not have a legitimate expectation of privacy in their cells and, therefore, the Fourth Amendment protection against unreasonable searches and seizures is not available to them. Hudson v. Palmer, 468 U.S. 517, 526 (1984).

### (f) Medical care

Plaintiff's claim of deliberate indifference to his medical needs is not alleged against any specific named defendant. While Plaintiff references ¶¶ 19 and 22 as the

facts supporting his claim for deliberate indifference, these paragraphs only reference Diana Villareal and Cobb, neither of whom are named as defendants. Moreover, Diana Villareal and Cobb are both alleged to be private homeowners and not state actors. Lastly, the Complaint does not contain any allegations that Plaintiff was denied medical care for the injury to his thumb. Rather, Plaintiff's complaint appears to be that the DOC should have paid for his care and not the Cobb's insurer.

To state a claim for deliberate indifference to his medical needs, Plaintiff must allege that a defendant acting under color of state law, who was responsible for Plaintiff's medical care, acted with deliberate indifference to Plaintiff's medical needs. To be actionable the conduct must be more than negligence or medical malpractice, but something less than conduct undertaken with an intent to cause harm. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Farmer v. Brennan, 511 U.S. 825, 837 (1994); Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

Plaintiff has only alleged that he received a serious injury while he was working at the home of two private individuals and that he received medical care, which was paid for by the insurer of the private individual. and paid for it. In the absence of more facts, Plaintiff has failed to state a claim for deliberate indifference to his medical needs under § 1983.

(g) Loss of gain time, wages, and job training referenced in ¶34

In support of his claims for loss of gain time, lost wages and job training Plaintiff references ¶34 of his Complaint. These complaints concern losses that occurred during the time Plaintiff should have been in DOC custody rather than working at the

private homes. Plaintiff, however, fails to name any defendant in connection with this claim or these losses.

Loss of gain time is a claim that more properly should be brought in a habeas proceeding because it challenges the fact or duration of Plaintiff's confinement and seeks immediate or speedier release. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Heck v. Humphrey, 512 U.S. 477 (1994). Prisoners may not seek to reduce their period of confinement through a civil rights action. Preiser, 411 U.S. at 499.

As discussed above, Plaintiff has no right to wages from the DOC for his prison labor and does he have a constitutional right to job training while incarcerated in a Florida prison. Daniels v. Crosby, 444 F. Supp. 2d 1220, 1226-1227 (N.D. Fla. 2006).

While Plaintiff's Complaint fails to state a claim for relief in many respects, as outlined above, in view of Plaintiff's *pro se* status the Court will, nonetheless, permit Plaintiff an opportunity to amend his complaint to name the proper defendants, eliminate claims that are not viable, and to provide more facts. To amend his complaint, Plaintiff should <u>completely</u> fill out a new civil rights complaint form, marking it "Amended Complaint." An amended complaint completely replaces all previous complaints and all earlier complaints are disregarded. N.D. Fla. Loc. R. 15.1. Plaintiff should file the amended complaint in the Court and keep one identical copy for himself. In amending, Plaintiff should carefully review the following to determine whether he can present allegations sufficient to state a cause of action:

> 1) Plaintiff must state what rights have been violated under the Constitution, laws or treaties of the United States. It is improper for the Plaintiff to merely list constitutional or federal rights. Further, Plaintiff must provide support in the statement of facts for the claimed violations.

2) Plaintiff should clearly describe how each named defendant is involved in the alleged constitutional violation(s) in the body of the complaint. Plaintiff should note that in civil rights cases, more than conclusory and vague allegations are required to state a cause of action. Plaintiff must also show how he was harmed or injured by the actions and/or omissions of the defendant(s).

3) Plaintiff should name only defendants who participated in the alleged deprivation of constitutional rights or those persons who directed the action and/or omission that resulted in such deprivation.

Accordingly, it is **ORDERED:**

1. The **Clerk** is directed to send the Plaintiff a blank civil rights complaint form, which Plaintiff shall complete in full and file on or before **January 14, 2011.**

2. Failure to comply with this Order in the allotted time will result in a recommendation to the district judge that this cause be dismissed.

**DONE AND ORDERED** this 27th day of December, 2010.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge